UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VASQUEZ RIOS,<br><br>                               Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>                               Defendant. | Case No.: 21-CV-552-WVG<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF COMMISSIONER OF SOCIAL SECURITY** |

## I.     INTRODUCTION

This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Robert Vasquez Rios' ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act ("Title II"). On April 11, 2022, the Parties filed a Joint Motion for Judicial Review ("Joint Motion") pursuant to the Court's September 15, 2021, Scheduling Order. (Doc. Nos. 15, 21.) The Joint Motion addresses two matters, namely whether Administrative Law Judge Andrew Verne ("ALJ Verne") (1) properly weighed treating physician Dr. Ehler's opinion; and (2) erred in assessing Plaintiff's credibility as to Plaintiff's work history. Having reviewed and considered the Parties' submissions, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The Court explains below.

## II. PROCEDURAL HISTORY

On January 27, 2016, Plaintiff filed an application for disability benefits pursuant to Title II, alleging he could no longer work due to a disabling condition that began on or around October 15, 2014. (AR 99, 110 122, 127.) On June 21, 2016, the Commissioner denied Plaintiff's initial application. (AR 149-152.) On June 27, 2016, Plaintiff requested reconsideration of the Commissioner's determinations. (AR 154.) On October 12, 2016, the Commissioner denied Plaintiff's request for reconsideration. (AR 155-159.) On October 14, 2016, Plaintiff requested a hearing before an ALJ. (AR 161-162.) On May 4, 2018, both Plaintiff and Sandra Trost, an impartial vocational expert, appeared and testified at the hearing on Plaintiff's application. (AR 127.) On August 14, 2018, ALJ Mark B. Greenberg ("ALJ Greenberg") affirmed the initial ruling denying Plaintiff's application for disability benefits. (AR 127-135.) On August 6, 2019, the Appeals Council, comprised of Administrative Appeals Judges Laura D. Ort-Presley and James Short, granted Plaintiff's request for review under the error of law provision of the Social Security Administration regulations. 20 C.F.R § 404.970. (AR 142-143.)

On May 20, 2020, ALJ Verne convened a hearing on Plaintiff's application. (AR 36-97.) Plaintiff appeared in person and was represented by non-attorney, Michael Stephen Stretton III. (*Id*.) Vocational expert Katie Macy-Powers was also present. (*Id*.) On June 17, 2020, ALJ Verne affirmed the initial determination finding Plaintiff was not disabled under sections 216(i) and 223(d) of Title II and rejected Plaintiff's request for an additional two weeks to submit rebuttal evidence. (AR 15-27.) On February 13, 2021, Appeals Officer Tina F. Cantarella rejected Plaintiff's request for review of ALJ Verne's June 17, 2020, decision (AR 1-3.) In doing so, ALJ Verne's decision became final. On March 29, 2021, Plaintiff filed the complaint in the instant case seeking review of ALJ Verne's decision. (Doc. No. 1.)

/ / /

/ / /

### III. FACTUAL BACKGROUND

#### a. Plaintiff's Medical History and Allegations

Plaintiff is a 65-year-old male and alleges he is unable to work due to the following physical impairments: degenerative disc disease, sciatica, osteoarthritis of the left knee, diabetes mellitus, obesity, and osteoarthritis of the left shoulder. (AR 98, 18.) Plaintiff states the pain in his left shoulder and left knee began in or around 2009 or 2010. (AR 469.) Plaintiff states he takes Ibuprofen and Diclofenac Sodium daily to mitigate his pain. (AR 469.) Plaintiff has been an insulin dependent, Type 2 diabetic for the past 32 years. (AR 644, 857.)

Plaintiff commenced his employment with San Diego Gas & Electric ("SDGE") in 1978, beginning as a laborer and then serving as a construction supervisor starting in 2000. (AR 373, 448.) Plaintiff worked in SDGE's gas department and worked approximately three hours per day in the office, with his remaining time spent in the field doing physical labor including carrying and lifting sometimes over 100 pounds. (AR 51, 90-91.) On October 15, 2014, Plaintiff left his job with SDGE. (AR 99.) Plaintiff alleges he left his employment due to worsened shoulder pain and stress. (AR 89, 129, 457.)

#### b. Early Diagnosis and Treatment by Primary Care Provider Dr. Michael F. Magpile

On June 3, 2014, Plaintiff presented to his primary care physician Dr. Magpile with chronic left shoulder pain. (AR 649.) Previously, on February 24, 2012, Plaintiff completed a magnetic resonance imaging ("MRI") on his left shoulder, which revealed severe osteoarthrosis with progression compared to previous x-rays. (AR 649.) Dr. Magpile found Plaintiff to have decreased range of motion to the shoulder due to pain with crepitus and provided an orthopedic referral. (AR 650.) On June 10, 2014, Dr. Keefe provided an orthopedic consultation report per Dr. Magpile's request. (AR 653). Dr. Keefe stated Plaintiff appeared moderately limited with arthritis in the left shoulder, and Plaintiff should continue taking ibuprofen as needed, do home exercise programs, and reported being happy

with his treatment plan. (AR 655.) Dr. Keefe found Plaintiff to have a smooth gait and normal alignment. (AR 849.)

### c. Plaintiff's Treatment with Dr. Rolf Ehlers

On August 24, 2015, Plaintiff began treatment with Dr. Rolf Ehlers. (AR 579-580.) Dr. Ehlers noted Plaintiff had "left sciatic pain which he can live with," and was generally "well developed, well nourished, and in no acute distress." (*Id.*) Dr. Ehlers opined Plaintiff had normal movements of all extremities, no joint swelling, no spinous point tenderness, and normal back range of motion. (AR 581.) On January 7, 2016, Dr. Ehlers ordered x-rays of Plaintiff's knees which were interpreted to present mild degenerative spurring bilaterally with mild chondrocalcinosis, on the left knee more than the right. (AR 589.) The x-rays established small-moderate left knee joint effusion. (AR 589.) On January 24, 2017, Plaintiff presented with back pain going from his left buttock down left leg; Dr. Ehlers found there was no loss of function, but the pain was consistent with sciatica. (AR 719.) Dr. Ehlers noted Plaintiff was "well developed, well nourished, and in no acute distress." (AR 720.)

On April 8, 2017, Plaintiff presented to physician's assistant Debbie Frogozo due to two episodes where he felt his left leg was going to give out and also experiencing lower back pain radiating into his gluteus. (AR 712.) Ms. Frogozo noted Plaintiff's symptoms were possibly due to his elevated blood pressure, which was 164/79. (AR 712.)

On November 4, 2019, Dr. Ehlers reported Plaintiff's right shoulder had full abduction and internal rotation was full exported, but the left shoulder had less than 50 percent extension and abduction of 10 percent. (AR 889.) Dr. Ehlers noted Plaintiff was seen by Dr. Levinson in 2008, who then suggested Plaintiff have a shoulder replacement, which he declined at the time. (AR 887.) Dr. Ehlers found Plaintiff to be "well developed and well nourished." (AR 889.) On December 2, 2019, Dr. Ehlers similarly found Plaintiff to be "well developed and well nourished," with decreased range of motion in his left shoulder and no lower extremity numbness. (AR 886.)

On February 26, 2020, Plaintiff presented to Ms. Frogozo with lower back pain radiating down both legs and occasional weakness. (AR 880.) Ms. Frogozo noted Plaintiff was sent to complete physical therapy last year, but he chose not to attend and did at-home exercises instead. (AR 881.) Ms. Frogozo noted Plaintiff was "well developed, well nourished, and is in no acute distress," with "reduced range of motion, and pain with lumbar extension." (AR 883.)

### i. Dr. Ehlers's Treating Source Statements

On February 23, 2018, and November 6, 2019, Dr. Ehlers provided treating source statements. (AR 661-664, 825-828.) On both occasions, Dr. Ehlers found Plaintiff to be off task more than 25 percent of the day and incapable of reaching overhead with his left arm and hand. (AR 661, 663, 825, 827.) Additionally, on both occasions Dr. Ehlers found Plaintiff could never climb ladders and scaffolds, rarely stoop, kneel, crouch, crawl, and could never be exposed to unprotected heights, and could be exposed rarely to moving mechanical parts. (AR 664, 828.) In 2018, Dr. Ehlers opined Plaintiff required the option to sit or stand at will, and could sit two hours in an eight-hour workday, and could stand and walk for one hour in a eight hour work day. (AR 662.) Additionally, Dr. Ehlers stated Plaintiff could never be exposed to unprotected heights, moving mechanical parts, and vibrations, could occasionally operate a vehicle with the right hand only, and could rarely be exposed to extreme cold and heat. (AR 664.) In 2019, Dr. Ehlers opined Plaintiff required the option to sit or stand at will, and could sit four hours in an eight hour work day, and could stand and walk less than one total hour in an eight hour work day. (AR 826.) Additionally, Dr. Ehlers found Plaintiff could never be exposed to unprotected heights, could rarely be exposed to moving mechanical parts, and could occasionally operate a vehicle and be exposed to extreme heat, cold, and vibrations. (AR 828.)

### d. Plaintiff's Treatment with Dr. Austerlitz

On August 4, 2016, Plaintiff presented to Dr. Austerlitz with a chief complaint of left shoulder pain. (AR 644.) Dr. Austerlitz noted there was no tenderness to palpation about the left shoulder or AC joint itself, Plaintiff could not bring his thumb to his belt line

posteriorly, and had external rotation only to zero degrees. (*Id.*) Additionally, Dr. Austerlitz noted Plaintiff possessed excellent strength against manual resistance of his rotator cuff muscles. (*Id.*) Overall, Dr. Austerlitz's impression was Plaintiff had advanced osteoarthritis in the left shoulder. (AR 645.) Dr. Austerlitz suggested an occasional cortisone injection, which Plaintiff chose to defer. (*Id.*)

### e. Plaintiff's Treatment with Consultative Examiner Dr. Sabourin

On April 14, 2016, Dr. Sabourin completed an orthopedic examination of Plaintiff. (AR 625-628.) Upon examination, Dr. Sabourin found Plaintiff had mild crepitus in the shoulder joint along with mild weakness of external and internal rotation, but not enough to make him think there is no rotator cuff. (AR 626.) Dr. Sabourin found a decreased range of motion in the left shoulder, and decreased range of motion in both the left and right knees. (AR 627.) Dr. Sabourin found satisfactory station and gait. (AR 626.) At this visit, Dr. Sabourin took x-rays of Plaintiff's spine, left shoulder, and left knee. (AR 630.) Dr. Sabourin found Plaintiff's lumbar spine has normally aligned vertebrae which are normal in height. (*Id.*) Dr. Sabourin found early osteoarthritis in the acromioclavicular and glenohumeral joints of Plaintiff's left shoulder, and early osteoarthritis in the left knee. (*Id.*) In his Medical Source Statement, Dr. Sabourin stated Plaintiff had "significant limitations," he could only lift or carry 20 pounds occasionally and 10 pounds frequently, and would be able to climb, stoop, kneel, and crouch only frequently due to back and knee problems. (AR 640.)

### f. Non-Treating Physicians' Evaluation of Plaintiff's Medical Condition

On June 15, 2016, non-examining consultant Dr. K. Sin opined the severity of Plaintiff's alleged physical impairments was not supported by objective evidence. (AR 104.) Dr. Sin found the evidence showed Plaintiff had some limitations, such as limits pulling, lifting, standing and walking, and sitting, but they did not prevent him from performing his past relevant work. (AR 105-107.)

/ / /

/ / /

On October 12, 2016, Dr. Weeks provided a medical evaluation for Plaintiff. (AR 116-121.) Dr. Weeks found Plaintiff's statements regarding symptoms partially consistent with the medical and non-medical evidence in the file because the severity of Plaintiff's alleged physical impairments was not supported by objective evidence. (AR 117.) Dr. Weeks found Plaintiff had the residual functional capacity ("RFC") to perform his past relevant work, and thus was not disabled. (AR 120.)

### g. Vocational Expert Testimony

At the May 20, 2020, administrative hearing on Plaintiff's disability benefits application, vocational expert Katie Macy-Powers testified the concreting supervisor position was rated as exertional level-light, though it was performed at the medium to heavy levels. (AR 59.) The Dictionary of Occupational Titles ("DOT") definition for the position did not distinguish between reaching and one-handed reaching. (AR 63.) The vocational expert testified a hypothetical person with Plaintiff's limitations could perform the position as delineated by the DOT; however, the vocational expert added the hypothetical person could not perform the position when considering how the position was performed in practice. (AR 61.) The vocational expert testified the hypothetical person also would not possess transferrable skills to either light or sedentary work. (*Id*.)

### h. Plaintiff's Testimony

On February 23, 2016, Plaintiff submitted his responses to a pain questionnaire. (AR 469-471.) Plaintiff testified he walked very little and spent most of his days off his feet. (AR 470.) Plaintiff testified he was forced to stop performing yard work within 10 minutes because of pain. (AR 471.) Plaintiff stated he could run errands such as going to the grocery store, walking one short block outside his house, standing for approximately a half hour at a time, sitting for an hour at a time, driving his own car, doing light housekeeping chores, and that he required help with yard work, unloading groceries, and lifting anything. (*Id*.)

On May 4, 2018, Plaintiff testified he shopped and ran errands "once in a while," but only for a short amount of time because he felt his right leg would give out underneath him. (AR 80.) Plaintiff testified he did everything with his right hand and required his

wife's assistance to apply deodorant. (AR 82.) On May 20, 2020, Plaintiff testified his left shoulder pain worsened to the point where he could not rotate it, lift it, or put anything on it. (AR 46.) Plaintiff alleged his back and legs went numb and the bottom of his feet would tingle. (*Id*.)

### i. ALJ Verne's June 17, 2020 Decision

On May 20, 2020, a telephonic hearing took place before ALJ Verne; Plaintiff appeared in person, represented by non-attorney Michael Stephen Stretton, III, and vocational expert Katie Macy-Powers. (AR 36-97.) At issue was whether Plaintiff is disabled under sections 216(i) and 223(d) of the Social Security Act, and whether the insured status requirements of section 216(i) and 223 of the Social Security Act are met. (AR 16.) ALJ Verne found Plaintiff was not disabled within the meaning of the Act from October 15, 2014, through the date of the decision, and made seven findings and conclusions of law (AR 16-27):

(1) **Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. (AR 17.)**

(2) **Plaintiff has not engaged in substantial gainful activity since October 15, 2014, alleged onset date. (AR 17.)**

Although Plaintiff engaged in employment after the alleged onset date of October 15, 2014, the work was not substantial gainful activity. (AR 18.) Plaintiff earned $12,045 in 2015 due to unused vacation, compared with $88,970 between January 2014 and October 15, 2014. (*Id*.)

(3) **Plaintiff has the following severe impairments: degenerative disc disease, sciatica, osteoarthritis of the left knee, diabetes mellitus, obesity, and osteoarthritis of the left shoulder. 20 C.F.R § 404.1520(c); (AR 18.)**

(4) **Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R § 404.1520(d), 404.1525 and 404.1526); (AR 19.)**

>The evidence does not establish that Plaintiff's back impairments and knee and shoulder impairments rise to the level of severity required by listings 1.04 and 1.02. (AR 19.) Likewise, Plaintiff's diabetes mellitus and obesity do not increase the severity of coexisting impairments such that the combination of impairments meets the requirements of a listing. (*Id.*)

(5) **Plaintiff has the RFC to perform light work as defined in 20 C.F.R § 404.1567(b) except he can lift, carry, push, and pull 20 pounds occasionally and up to 10 pounds frequently; and stand and/or walk for six hours and sit for six hours in an eight-hour workday with normal breaks. He can frequently climb ramps and stairs, but is unable to climb ropes, ladders, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can never reach overhead with the non-dominant left upper extremity, and frequently reach in front and laterally with the non-dominant left upper extremity. He should avoid concentrated exposure to vibration and extreme cold; should have no exposure to unprotected heights; and should avoid even moderate exposure to hazards including dangerous moving machinery. (AR 20.)**

>Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence in the record. (*Id.*) Little weight is assigned to Dr. Ehlers' opinion because it is inconsistent with the record, which does not demonstrate such extreme physical or mental limitations, including physical examination findings revealing normal gait, full motor strength in all extremities, intact sensation, adequate lumbar range of motion, and adequate left upper extremity range of motion for forward and lateral movements. (AR 25.)

**(6) Plaintiff is capable of performing past relevant work as a concreting supervisor. This position does not require performance of work-related activities precluded by the claimant's RFC. 20 C.F.R § 404.1565; (AR 26.)**

> The vocational expert found the concreting supervisor job is typically performed at the light exertional level. However, Plaintiff actually performed this position at the medium to heavy exertional level. (AR 26.) The vocational expert further testified an individual with Plaintiff's age, education, work experience, and RFC could perform the job as it is generally performed in the national economy per the DOT Titles. (*Id.*) The DOT contains ambiguities as to if this job requires frequent reaching overhead or general reaching, and states the job requires occasional climbing of ladders, ropes, or scaffolds. (*Id.*) The vocational expert testified the job does not require overhead reaching with the non-dominant left upper extremity or climbing ladders, ropes, or scaffolds. (*Id.*) While this information varies from the DOT, it is explained by the fact that the vocational expert's opinion was supplemented by their professional training and experience. (*Id.*)

**(7) Plaintiff has not been under a disability as defined in the Social Security Act, from October 15, 2014, through the date of the decision. 20 C.F.R § 404.1520(f). (AR 26.)**

## II. LEGAL STANDARD

### a. Title II Analysis

Claimants may seek judicial review if they are dissatisfied with the result of their application for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. § 405(g). However, the scope of judicial review is limited, as the Commissioner's decision to deny benefits "will be disturbed only if it not supported by substantial evidence or is based on legal error." *Brawner v. Sec'y of Health and Human Servs.*, 830 F.2d 432, 433 (9th Cir. 1988); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (substantial evidence is "more than a mere scintilla" but less than a preponderance). The court is

required to assess the totality of the record, including evidence supporting and undercutting the Commissioner's findings. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). The court must affirm the ALJ's decision when the evidence could support more than one rational interpretation; deference is required under such circumstances. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1; *Sandgathe*, 108 F.3d at 980.

### III.  DISCUSSION

#### a. ALJ Verne's Assessment of Dr. Ehler's Opinion

The first issue Plaintiff raises is whether the ALJ properly weighed Dr. Ehler's opinion. Plaintiff contends ALJ Verne's RFC finding was not supported by substantial evidence and led ALJ Verne to erroneously conclude Plaintiff was not disabled. Plaintiff further alleges ALJ Verne should have placed greater weight on Dr. Ehler's assessment due to his long-standing treatment of Plaintiff. The Commissioner responds Dr. Ehler's opinion is factually unsupported and contradicted by substantial evidence in the record, including the opinions of three physicians who found fewer limitations. The Commissioner also argues Plaintiff misstates the law, noting when a doctor's opinion differs from other doctor's, the ALJ must only provide specific and legitimate reasons for discounting an opinion. *Bayliss*, 427 F.3d at 1216. The Court agrees with the Commissioner on each point.

The Court finds no basis to disturb ALJ Verne's Decision even after considering the evidence to which Plaintiff cites in the Joint Motion for Judicial Review. In support of his position, Plaintiff cites to Dr. Ehler's November 6, 2019, treating source statement, where Dr. Ehler's opined Plaintiff requires the option to sit or stand at will, and can sit four hours and stand and walk less than one hour in an eight-hour workday. (AR 826.) In 2018 and 2019, Dr. Ehlers opined Plaintiff was off task over 25 percent of the workday. (AR 661, 825.) Plaintiff contends Dr. Ehler's opinions indicated Plaintiff can perform sedentary work as opposed to the more demanding category of light work, which ALJ Verne had found.

Having reviewed the entirety of the record, the Court finds ALJ Verne provided specific and legitimate reasons for assigning little weight to Dr. Ehler's February 2018 and November 2019 treating source statements. (AR 24-25.) ALJ Verne found Dr. Ehler's opinions inconsistent with the record as whole, as the record did not validate the extreme limitations Dr. Ehlers found. For example, Plaintiff's physical exams revealed a normal gait, full motor strength in all extremities, intact sensation, adequate lumbar range of motion, and adequate left upper extremity range of motion for forward and lateral movements. (*Id*.) The ALJ is not required to incorporate the opinions of treating physicians where they are contradicted by objective medical evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1990 (9th Cir. 2004). For this reason, ALJ correctly stated reasons for assigning little weight to Dr. Ehler's statements.

Notwithstanding the above, Plaintiff argues Dr. Ehler's opinion merited more weight than ALJ Verne to bolster his alleged severe impairments. Plaintiff points to Dr. Ehler's notes stating Plaintiff struggled with severe shoulder pain and experienced limited rotation of his upper left extremities. Plaintiff also cites to an orthopedic visit with Dr. Sabourin to demonstrate the consistency between Dr. Sabourin's assessment and Dr. Ehler's. During Plaintiff's April 14, 2016 visit, Dr. Sabourin determined Plaintiff's left shoulder flexion was limited, his external rotation was compromised, his internal rotation was half of the normal range, and the range of motion of his knees and hips were restricted. ALJ Verne, however, was unpersuaded. He noted Plaintiff's physical examinations generally showed no tenderness to palpitation of the left shoulder or acromioclavicular joint along with findings indicating an intact rotator cuff. (AR 21.) ALJ Verne also noted Plaintiff's April 14, 2016 visit with Dr. Sabourin demonstrated Plaintiff had normal grip strength, satisfactory gait and station with no limp, normal heel and toe walking, only slightly reduced range of motion of the lumbar spine, negative sitting and supine straight leg raise tests, and normal Trendelenburg, McMurray, and axial load tests. (AR 22.) Based on this objective medical evidence, ALJ Verne concluded Dr. Ehler's findings of extreme limitation were over-stated and inconsistent with the record.

Plaintiff then cites to objective imaging to support his alleged impairments. Plaintiff further cites to objective imaging and x-rays revealing spondylosis L1-31, facet joint arthritis in the lumbar spine and early osteoarthritic acromioclavicular and glenohumeral joints, and mild degenerative spurring bilaterally of the knees, and left knee joint effusion to demonstrate ALJ Verne improperly discounted Dr. Ehler's opinion. In his Notice of Decision, however, ALJ Verne observed Plaintiff's imaging revealed normal disc spaces and normal height and alignment of vertebrae. (AR 22.) Additionally, ALJ Verne noted the imaging of Plaintiff's left knee revealed normally aligned and intact bones consistent with early osteoarthritis. (*Id.*) ALJ Verne appropriately addressed the objective imaging, discounting the severity of Plaintiff's impairments.

Next, Plaintiff argues ALJ Verne erred in his RFC determination by placing weight on the vocational expert's opinion. Specifically, Plaintiff argues the vocational expert's opinion that Plaintiff needed to alternate between standing and walking proves Plaintiff could not perform his past work. However, ALJ Verne found Plaintiff's job as a concreting supervisor was generally performed at the light exertional level in accordance with the DOT, even though Plaintiff actually performed the work at a medium to heavy exertional level. (AR 26.) ALJ Verne concluded the vocational expert's testimony was not entirely consistent with information in the DOT regarding the job's requirement of frequent reaching. (*Id.*) The DOT did not distinguish between reaching overhead and reaching in general, or reaching with one extremity versus the other or both. (*Id.*) The vocational expert opined the job does not require overhead reaching with the non-dominant left extremity or climbing ladders, ropes, or scaffolds.

ALJ Verne determined the vocational expert's opinion was validated by her professional training and experience. (*Id.*) Once the ALJ determines a conflict exists between the DOT and vocational expert testimony, the ALJ must determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *see also Bayliss*, 427 F.3d at 1218 (holding a vocational expert's expertise

provides the necessary foundation for his or her testimony regarding number of relevant jobs in the national economy). The Court agrees with ALJ Verne's opinion; the vocational experts professional training and experiences is a reasonable basis for diverging from the DOT.

Finally, Plaintiff argues ALJ Verne did not provide "obvious consideration" to 20 C.F.R. section 404.1527(c)(2), which states treating source opinions are generally entitled greater weight. 20 C.F.R. § 404.1527(c)(2). Plaintiff argues the law does not require a treating source's opinion to be wholly aligned with other physicians' opinions to meet the threshold of consistency. However, Plaintiff overlooks a critical part of the legal standard in his analysis. Plaintiff states a treating source medical opinion may not be rejected absent "clear and convincing reasons for doing so," but this statement of law controls only where the treating doctor's opinion is uncontradicted. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). The Commissioner must provide "specific and legitimate reasons," supported by substantial evidence in the record, for rejecting a treating doctor's opinion when it is contradicted. *Murray v. Heckler*, 772 F.2d 499, 502 (9th Cir. 1983).

Here, ALJ Verne provided specific and legitimate reasons, supported by substantial evidence in the record, for assigning little weight to Dr. Ehler's opinion. (AR 24-25.) Plaintiff argues Dr. Ehler's opinions must be read in a different light; however, ALJ Verne's assessment of the totality of the record governs here, not Plaintiff's subjective belief of how the record should be interpreted. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). At all times, a doctor's status as a treating physician is one of six factors, including the examining relationship, treatment relationship, supportability, consistency, specialization, along with other factors, the ALJ must consult when evaluating a medical opinion. 20 C.F.R. § 4040.1527 (c). ALJ Verne conducted a comprehensive analysis of the totality of the record here, as discussed above. Taken together, these reasons confirm the ALJ's decision to assign little weight to Dr. Ehler's opinion was proper. Accordingly, the Court finds there are no valid grounds to disturb the ALJ's ruling on this issue.

### b. ALJ Verne's Credibility Assessment of Plaintiff's Work History

The second issue Plaintiff raises is whether ALJ Verne erred in his assessment of Plaintiff's credibility as it relates to Plaintiff's work history. Plaintiff argues ALJ Verne's credibility assessment is defective because ALJ Verne failed to consider Plaintiff's consistent work history, which spans between 1975 and 2015 at SDGE. The Commissioner counters that ALJ Verne explicitly addressed Plaintiff's work history during the May 20, 2020, hearing and further addressed Plaintiff's work history in his June 17, 2020 decision. The Commissioner argues ALJ Verne and ALJ Greenberg both stated in their decisions that all of the evidence was considered, and the record includes Plaintiff's work documents such as a work history report, FICA earnings, detailed non-covered earnings and W-2 pension data. The Commissioner adds Plaintiff suffers from overarching credibility issues, citing to medical evidence contradicting the degree of limitations Plaintiff alleged, including Plaintiff's conservative treatment and declining treatment recommendations, inconsistencies within Plaintiff's reports to medical providers, and Plaintiff's admitted engagement in activities inconsistent with the disabling degree of limitations he alleges.

The Court finds ALJ Verne properly assessed Plaintiff's credibility, particularly with respect to the matter of Plaintiff's work history. Plaintiff alleges his work history of 41 years is not addressed by ALJ Verne and cites to section 404.1529 (c)(3), which states the ALJ is required to "consider all of the evidence presented, including information about [Plaintiff's] prior work record (along with other evidence.)" Plaintiff also cites to case law where the ALJ relied upon a claimant's poor work history as detracting from their overarching credibility and argues fundamental fairness requires a similar analysis for an outstanding work history. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). (AR 30.)

The Court finds the record clearly demonstrates ALJ Verne considered Plaintiff's consistent work history when ALJ Verne issued his June 17, 2020 Decision. In his Decision, ALJ Verne noted Plaintiff "worked as a concreting supervisor for [SDGE] from 2000 through 2014." (AR 26.) Further, during the May 20, 2020, hearing, ALJ Verne stated Plaintiff was "working for a number of years" for SDGE. (AR 42). In his examination of

Plaintiff, ALJ Verne asked Plaintiff questions regarding Plaintiff's job duties at SDGE. Thus, having reviewed the transcript of ALJ Verne's examination, the Court finds ALJ Verne facilitated an in-depth discussion concerning Plaintiff's work history and did not ask merely superficial questions. (AR 43-45.) Further, in his Decision, ALJ Verne explained his Decision was based on "careful consideration of all the evidence;" likewise, he stated that his findings are based upon "consideration of the entire record." (AR 16-17.) The record contains Plaintiff's detailed employment documents such as his certified earnings record (AR 369-371), Plaintiff's work history report, (AR 448-454), FICA earnings (AR 372) detailed non-covered earnings and W-2 pension data (AR 378-381.) Plaintiff's assertions that ALJ Verne failed to consider these items is squarely at odds with ALJ Verne's Decision and the underlying record. To that end, Plaintiff has failed to put forth any evidence that ALJ Verne misrepresented that he carefully considered the "entire record" in his Notice of Decision.

Finally, Plaintiff argues fundamental fairness requires consideration of his work history. However, Plaintiff fails to provide any authority for this argument. 20 C.F.R. § 404.1529 (c)(3) only requires the ALJ "consider all of the evidence presented, including information about [Plaintiff's] prior work record (along with other evidence)." The record plainly shows ALJ Verne in fact considered Plaintiff's work history. Thus, the Court finds no error has been committed. *Burch v. Barnhart*, 400 F.3d 676, 679 ("A decision of the ALJ will not be reversed for errors that are harmless."). This reason, amongst those that precede it, confirm that no grounds exist to undo ALJ Verne's credibility assessment of Plaintiff as it relates to Plaintiff's work history or otherwise. Accordingly, ALJ Verne's assessment still stands and the Court shall not disturb its findings related to this second issue Plaintiff raises.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Judgment. The Clerk of the Court SHALL ENTER judgment accordingly.

**IT IS SO ORDERED.**

Dated: August 11, 2022

Hon. William V. Gallo
United States Magistrate Judge